**Not for Publication**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

TYHESHA LETT, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

WAUSAU UNDERWRITERS INSURANCE CO.,

    Defendant.

No. 2:20-cv-9630 (JMV)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    Plaintiff Tyhesha Lett brings this putative class action against her auto insurer, Defendant Wausau Underwriters Insurance Co. ("Defendant"), alleging that Defendant breached its insurance policy by failing to include title transfer and registration fees in the actual cash value payment for her totaled vehicle. Currently pending before the Court is Defendant's motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 5. Plaintiff filed an opposition to the motion, D.E. 6, to which Defendant replied, D.E. 7.[1] The Court has carefully reviewed the parties' submissions and decides the motion on the papers without oral argument pursuant Federal Rule of Civil Procedure 78(b). For the reasons stated below, Defendant's motion is **GRANTED**.

---

[1] The Court refers to Defendant's moving brief, D.E. 5-1, as "Def. Br."; to Plaintiff's opposition brief, D.E. 6, as "Pl. Opp'n Br."; and to Defendant's reply, D.E. 7, as "Def. Reply."

I.  **BACKGROUND**

Plaintiff, a New Jersey resident, owned a 2011 Mercedes-Benz R350 that she insured under an auto policy (the "Policy") issued by Defendant, an entity within the Liberty Mutual brand of insuring entities.[2] Compl. ¶¶ 11-14.[3] In September of 2017, Plaintiff's vehicle was totaled in an accident, for which she filed a property damage claim. *Id.* ¶ 15.

The Policy requires Defendant to pay for "direct and accidental loss" to Plaintiff's vehicle in the event of a collision. Policy, Part D at 6.[4] The Policy limits Defendant's liability for the loss to the lesser of the (1) actual cash value ("ACV") of the damaged property; or (2) amount necessary to repair or replace the property with other similar property. *Id.* at 8; Am. Endorsement at 5.[5] Thus, the policy makes a distinction between ACV and replacement costs – requiring the insurer to pay the lesser of the two. Where the amount to repair the damaged vehicle exceeds the value of the vehicle prior to the collision, Defendant treats the vehicle as a total loss and limits its liability to the vehicle's ACV, which is adjusted for depreciation and the vehicle's physical condition prior to the damage. Compl. ¶ 16; Policy, Part D at 9; Am. Endorsement at 5. Defendant then either

---

[2] Defendant is incorporated in Wisconsin and its principal place of business is located in Massachusetts. Compl. ¶ 12.

[3] For the purpose of deciding the instant motion, the Court draws all facts from Plaintiff's Complaint and the documents incorporated therein, D.E. 1-2, and accepts all well-pleaded facts as true in the light most favorable to Plaintiff. *See Cuevas v. Wells Fargo Bank, N.A.*, 643 F. App'x 124, 125-26 (3d Cir. 2016) ("[I]n deciding a motion to dismiss, all well-pleaded allegations . . . must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them.").

[4] The Court refers to the insurance policy attached as Exhibit A to Plaintiff's Complaint, D.E. 1-2, as the "Policy."

[5] The Court refers to the Automobile Amendatory Endorsement, AS 3769 06 16, attached as Exhibit A to Plaintiff's Complaint, D.E. 1-2, as "Am. Endorsement."

pays for the loss in money, including the applicable sales tax for the damaged vehicle, or repairs or replaces the vehicle.  Policy, Part D at 9.

Here, Defendant determined that Plaintiff's vehicle was a total loss and that its liability was limited to the vehicle's ACV.  Compl. ¶ 17.  Using a third-party vehicle valuation provider, Defendant further determined that the vehicle had a value of $19,824.00 with sales tax of $1,362.90, resulting in a total settlement amount of $20,686.90.  Valuation Report, Ex. B., Compl., D.E. 1-2.  This amount does not include the cost of New Jersey's title transfer fee ($85.00) or registration transfer fee ($4.50) (collectively, "Transfer Fees") that Plaintiff must expend to replace her damaged vehicle.  Compl. ¶¶ 19, 32.  Plaintiff alleges these fees must be included in the ACV calculation and payment because they are mandatory costs necessary to place her, as the insured, into her pre-loss position.  *Id.* ¶¶ 20, 28.  Failure to pay these fees, Plaintiff argues, is a breach of the Policy.  *Id.* ¶ 20.

On June 19, 2020, Plaintiff, individually and on behalf of a putative class of similarly situated New Jersey residents insured by Defendant, filed a one-count Complaint for breach of contract in the Superior Court of New Jersey, Law Division, Middlesex County.  Notice of Removal, D.E. 1.  Defendant timely removed the action to this Court on July 29, 2020, based on diversity jurisdiction.  *See* 28 U.S.C. §§ 1711(2), 1332(d), 1453; Notice of Removal ¶ 4, D.E. 1.  Defendant now moves to dismiss the Complaint for failure to state a claim under Rule 12(b)(6).

**II.     LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court takes

3

all allegations in the complaint as true and views them in the light most favorable to the plaintiff. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

While a complaint need not contain detailed factual allegations, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Twombly*, 550 U.S. at 555, 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. ANALYSIS

Defendant's motion presents the following question: whether the Policy requires Defendant to include the Transfer Fees as part of the ACV of a damaged vehicle. The answer turns on how the Policy and New Jersey law define ACV.[6] Defendant argues that neither the Policy nor New Jersey law require it to pay such fees. *See generally*, Def. Br. In opposition, Plaintiff argues that the purpose of ACV policies is to indemnify insureds and place them into their pre-loss position. Pl. Opp'n Br. at 4. Thus, Plaintiff argues that "ACV must include all costs necessary to replace the total loss vehicle with a comparable operable vehicle, which necessarily includes the mandatory and unavoidable Transfer Fees." *Id.* at 3.

---

[6] As this case is before the Court on diversity jurisdiction, the Court must interpret the contract language in the Policy under the substantive law of the state whose laws govern the action. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir. 1990). The parties appear to assume that New Jersey substantive law applies to the alleged facts of this case. Seeing no clear reason to deviate from the parties' assumption, the Court will apply New Jersey law.

The Court begins its analysis with a plain reading of the Policy. In doing so, the Court adheres to the well-settled principle that "under New Jersey law, 'the interpretation of insurance contracts requires generous readings of coverage provisions, narrow readings of exclusionary provisions, resolution of ambiguities in favor of the insured, and construction consistent with the insured's reasonable expectations.'" *GTE Corp. v. Allendale Mut. Ins. Co.*, 372 F.3d 598, 608–09 (3d Cir. 2004) (quoting *Cobra Prods., Inc. v. Fed. Ins. Co.*, 317 N.J. Super. 392, 400 (App. Div. 1998)). When "attempting to discern the meaning of a provision in an insurance contract, the plain language is ordinarily the most direct route," *Cypress Point Condo. Ass'n, Inc. v. Adria Towers, LLC*, 226 N.J. 403, 415 (2016) (quoting *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008)), and the "plain, ordinary meaning" of the terms control. *Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 595 (2001).

But "[w]hen the provision at issue is subject to more than one reasonable interpretation, it is ambiguous, and the 'court may look to extrinsic evidence as an aid to interpretation.'" *Templo Fuente de Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 224 N.J. 189, 200 (2016) (quoting *Chubb Custom Ins. Co.*, 195 N.J. at 238). "Under New Jersey law, ambiguity exists in an insurance contract where 'the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" *Resolution Tr. Corp. v. Fid. & Deposit Co. of Maryland*, 205 F.3d 615, 643 (3d Cir. 2000) (quoting *Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 247 (1979)). In that scenario, where "the controlling language of a policy will support two meanings, one favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied" and the ambiguity is resolved in favor of the insured. *Cypress Point Condo. Ass'n, Inc.*, 226 N.J. at 415-16 (citation omitted).

Here, the Policy does not expressly define ACV.  Nevertheless, the Policy provides that Defendant will either pay the lesser of the ACV of the damaged property *or* the amount necessary to repair or replace the property with other similar property.  Thu,s ACV is distinguished from replacement costs, and Defendant is obligated to pay the lesser of the two amounts.  Policy, Part D at 8; Am. Endorsement at 5.  The Policy further provides that the ACV calculation will adjust for depreciation and physical condition of the vehicle before the loss, and that the cash settlement payment will include applicable sales tax.  Policy, Part D at 9; Am. Endorsement at 5.  The Policy makes no mention of the inclusion of Transfer Fees in the determination of ACV, while at the same time expressly including sales tax.

The New Jersey Department of Banking and Insurance ("NJDOBI") and the New Jersey Administrative Code also offer guidance on the definition of ACV.  The NJDOBI's Glossary of Insurance Terms defines ACV as "[a]n amount equivalent to the *replacement cost* of a stolen or damaged property at the time of the loss, less depreciation."  Glossary of Ins. Terms, NJDOBI, available at https://www.nj.gov/dobi/ins_ombudsman/om_gloss.htm (last visited Feb. 14, 2021) (emphasis added).  Plaintiff interprets NJDOBI's use of the term replacement cost to mean the costs necessary to replace the vehicle, including "the payment of mandatory Transfer Fees required to obtain an operable vehicle."  Pl. Opp'n Br. at 9-10.  Plaintiff's argument has appeal at first glance, but NJDOBI's Glossary of Insurance Terms then defines replacement cost to mean:

> The cost to repair or replace an insured item.  *Some insurance only pays the actual cash or market value of the item at the time of the loss, not what it would cost to fix or replace it.*  If you have personal property replacement cost coverage, your insurance will pay the full cost to repair an item or buy a new one.

Glossary of Ins. Terms, NJDOBI, available at https://www.nj.gov/dobi/ins_ombudsman

/om_gloss.htm (last visited Feb. 14, 2021) (emphasis added). Similar to the Policy language, this definition distinguishes between two measurements of loss: actual cash value and the cost to repair/replace the property. Thus, the Court finds Plaintiff's argument unavailing.

New Jersey's Administrative Code defines ACV as "unless otherwise specifically defined by law or policy, . . . the lesser of the amounts . . . to: 1. Repair the motor vehicle to its condition immediately prior to the loss; or 2. *Replace* the motor vehicle with a substantially similar vehicle. The amount shall include all moneys paid or payable as sales taxes." N.J.A.C. 11:3-10.2 (emphasis added). Again, Plaintiff argues that the word "replace" must include *all* costs necessary to replace the damaged vehicle, but this interpretation is not consistent with the relevant Code provisions that follow. *See* Pl. Opp'n Br. at 9-10. Specifically, Code Section 11:3-10:4 goes on to provide an insurer guidance when adjusting total loss claims like the one at issue here. N.J.A.C. 11:3-10:4. Section 11:3-10:4 requires an insurer to make one of four specific settlement offers when it elects to make a cash payment on a total loss claim. *Id.* The insurer must offer: (1) "[t]he average of the retail values for substantially similar motor vehicles"; (2) "[a] quotation obtained by the insurer for a substantially similar motor vehicle from a dealer located within a reasonable distance" from the insured; (3) "[t]he fair market value of the insured vehicle, determined by using a source including a computerized database"; or (4) if it is not possible to value the insured vehicle by using a method above, "the insurer shall determine the retail value of the vehicle by using the best available method." *Id.* The Code expressly requires insurers to include applicable sales tax with its offer, *id.*, but it does not require insurers to pay replacement costs or Transfer Fees when adjusting total loss claims. Instead, the Code requires an amount equal to a comparable vehicle (determined by average values, quotation, fair market value, or the best available method when none of the first three are available).

7

The Court turns next to the authority cited by the parties in support of their interpretations of the meaning of ACV, although the present issue has not been extensively litigated in New Jersey in the context of an auto insurance policy. The parties rely on only two New Jersey court cases that address the meaning of ACV: *Titus v. W. Am. Ins. Co.*, 143 N.J. Super. 195 (N.J. Super. Ct. Law Div. 1976) and *Elberon Bathing Co. Inc. v. Ambassador Ins. Co. Inc.*, 77 N.J. 1 (1978). *See* Def. Br. at 10; Pl. Opp'n Br. at 14-15.

In *Titus*, the trial court, "unrestrained by controlling precedent," acknowledged the methods that other courts had adopted to determine a vehicle's ACV and determined that it would adopt the rule that ACV means market value. 143 N.J. Super. at 204 ("[T]his court hold that actual cash value means market value."). Two years later, in *Elberon*, the New Jersey Supreme Court examined the meaning of ACV in the context of the New Jersey Standard Form fire insurance policy. 77 N.J. 1. The court adopted the "broad evidence rule" to determine ACV, requiring "the fact-finder to consider all evidence an expert would consider relevant to an evaluation, and particularly both fair market value and replacement cost less depreciation." *Id.* at 13.

Plaintiff argues that *Elberon* is controlling here. The Court disagrees. *Elberon*'s holding clearly applied to a standard form fire insurance policy that covered a building, the value of which could not always be properly measured at market value alone. *Id.* at 9-14. The *Elberon* Court also discussed other methods and issues but discounted them because of a potential windfall *to the insured*. For example, the Supreme Court found that ACV should include the property's depreciation to avoid the insured recovering an excessive amount. *Id.* at 7-10. The Court in *Elberon* also found that a valuation method using "[r]eplacement costs less depreciation" often resulted in "excessive recovery." *Id.* at 10. The Supreme Court rejected the "market value" method because of the difficulty in considering the value of the property (building and land)

8

distinctly, observing that "a building ordinarily has no recognized market value independent of the parcel of property in entirety, land building together." *Id.* at 9-10 (citation omitted).

Plaintiff cites to no authority that has extended *Elberon* to vehicles and auto insurance policies, nor could the Court locate any. Instead, the Court's research revealed that *Elberon* has been applied to similar factual circumstances, *i.e.*, insurance coverage for fire damage to a building. *See, e.g.*, *Ward v. Merrimack Mut. Fire Ins. Co.*, 753 A.2d 1214, 1221 (N.J. Super. App. Div. 2000) (applying the broad evidence rule to insurance dispute concerning a building destroyed by fire); *Lancelotti v. Maryland Cas. Co.*, 617 A.2d 296, 298-99 (N.J. Super. App. Div. 1992) (same). Unlike a building, in which valuing the structure separate from the underlying real estate may raise valuation difficulties, Plaintiff points to no similar concerns as to a motor vehicle. Moreover, the Court will not apply the "broad evidence rule" here where both policy language and the Administrative Code provide sufficient guidance to insurers on how to calculate and pay ACV in the context of an auto insurance policy.

The parties also cite to District Court cases from around the country. *See* Def. Br. at 12-13; Pl. Opp'n Br. at 19-21. A survey of these cases demonstrates that the outcome depends on the applicable state law and/or insurance policy definitions of ACV. *See, e.g.*, *Singleton v. Elephant Ins. Co.*, 953 F.3d 334, 337-38 (5th Cir. 2020) (finding that, in line with Texas law, actual cash value means fair market value, which does not include taxes and fees); *Sos v. State Farm Mut. Auto. Ins. Co.*, 396 F. Supp. 3d 1074, 1080 (M.D. Fla. 2019) (finding that, in line with Florida caselaw, actual cash value under the policy means replacement cost minus depreciation and therefore includes title fees); *Carter v. Amica Mut. Ins. Co.*, No. 17-2156, 2018 WL 2096348, *report and recommendation adopted*, No. 17-2156, 2018 WL 4368668, at *1 (D. Colo. July 11,

9

2018) (finding that, pursuant to Colorado statute, insurers are expressly required to pay title, transfer, and registration fees on total-loss vehicles).

The Court is satisfied here that ACV, as used in the Policy, cannot be read to mean the replacement cost of the vehicle and the inclusion of Transfer Fees under New Jersey law. To read otherwise blurs the line between ACV and replacement cost, which both the Policy and New Jersey law treat as distinct measurements of loss. Accordingly, Plaintiff has failed to state a plausible claim against Defendant for breach of the Policy. The Court will therefore grant Defendant's motion and dismiss Plaintiff's Complaint.

### IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED** with prejudice for failure to state a claim.[7] An appropriate Order accompanies this Opinion.

Date: February 17, 2021

_____
John Michael Vazquez, U.S.D.J.

---

[7] The Court's general practice is to dismiss without prejudice to provide Plaintiff an additional opportunity to file an amended complaint consistent with the current Opinion. However, because this matter turns on the legal question discussed herein, any additional amendment would be futile.